Morning. We're going to start with In re the Marriage of Heck. And ma'am, would you pronounce your last name for us? It's alright, I'm here. Okay. Very nice to see you this morning, and if you'd proceed when you're ready. May I please report to council? Again, my name is Alana Mejias, and I'm here on behalf of the appellant. I will dispense with the recitation of the facts unless the court... Go ahead. There are two issues before the court today. The first is whether the evaluation of the property was against the manifest weight of the evidence. The property in question is an 80 acre tract, and the evaluation of that property was against the manifest weight of the evidence. The trial court considered speculative factors when determining the value. The trial court cannot speculate as to future values or events when valuing marital assets. If the evaluation is based on speculation or it's unknown, then that value is inappropriate. The testimony that the trial court considered was based on two experts, Voss and Tate. Voss was the expert for the appellee in this case, and he had valued one tract, which I believe was referred to as the 40 acre tract, at about $15,000 an acre. And he referred to this as agriculture with future development. The second tract, which was the 80 acre tract, which is the subject of this argument, was also valued at $15,000. However, he did say in his appraisal and in his testimony that if it was valued as agricultural acreage, which is what he classified it, it would be valued at $6,500. He indicated that the best use was agricultural in his appraisal and that it would be unsaleable at the $15,000 an acre as agricultural property. The court relied upon the $15,000 an acre appraisal and valued the property at $1.5 million. Based on the appellee's expert and on the appellant's expert, that valuation was inappropriate. The property was defined as agricultural acreage, which was the $6,500 an acre. The 80 acre tract needed to be zoned, which Voss stated would take at minimum of six years. The 40 acre tract, which was valued at $15,000 an acre, which I believe both experts agreed upon, had already been planted and was zoned. But even expert Voss stated that that property was not marketable for at a minimum of five years. But that's the 80 acres that had been planted. It was the 40 acres that had been planted. It's 40, okay. Correct. And tell me again, had it been planted for residential? The 40 acres, yes. Okay. And that property was, the expert Voss stated that it was not marketable for a minimum of five years. That was the 40 acre. The 80 acre had not been planted. It had not been zoned. Other impediments to that were that there was only one entryway and that there were no other new subdivisions under development in that area. So if a 40 acre tract, which had already been planted and zoned for residential property, was marketable at $15,000 five years from the date of the judgment of dissolution, then it stands to question how is property that cannot be planted or zoned for six to eight years valued at that same amount. The second issue before the court is whether the distribution of the marital assets was an abuse of discretion. Under the Illinois Marriage and Dissolution of Marriage Act, the court is required to consider the party's various contributions to the marital estate when dividing the assets in the property. All the land that was purchased, all the land was purchased by Joe prior to the marriage. Joe paid off all that land prior to the marriage, and virtually all of the liquid assets that were produced throughout the marriage were a product of that real estate and were a product of the production of those various subdivisions. And the court did consider Judy's contributions when it divided those liquid assets. Those assets were divided equally. The land, however, was also split equally, but the court did not take into consideration the overabundance of contributions made by Joseph Heck when it came to dividing those assets. And specifically, Joseph's age, his retired status, and the fact that pretty much the entire marital estate was primarily a result of the real estate purchases that he made and paid off prior to the party's marriage should have been considered by the trial court when making a disproportionate distribution of that marital property, the actual real estate, not the liquid assets, which were divided equally. And that is all I have, Your Honors. Okay, thank you. Thank you. Mr. Stubblefield? My name is Tim Stubblefield. I represent the Apple League, Judy Heck. As Alava has pointed out, the issue here is the manifest way of the evidence with regard to the valuation of the 80 acres. That's really the issue that's the biggest issue in this case. In order to find that it's against the manifest way of the evidence, you have to find that it's arbitrary, unreasonable, or not based on the evidence presented to the trial court. In this case, we have a battle of the experts, so we do have a basis in the evidence. So therefore, what you're going to have to find in order to overturn the trial court is that the ruling of the trial court was arbitrary or unreasonable. And in this case, since there is evidence there, what you're going to have to find is that relying on Mr. Voss' testimony is arbitrary or unreasonable. Now, the appellant gave you some facts, and I don't think they're exactly correct. What we have here is we have three pieces of property that the appraisers relied upon. You have the 40-acre tract, you have the 80-acre tract, and then you have Grandview Subdivision, which is what was developed first. These people own all three of them. They developed Grandview Subdivision in the early 1990s. The 40-acre tract is contiguous to one side of Grandview. The 80-acre tract is contiguous to the other side of Grandview. Mr. Tate, who is their appraiser, appraises this property, 40-acre property, at $15,000 an acre. Mr. Voss agrees. The reason he appraises it at $15,000 an acre is because it's contiguous to the subdivision. It's across from Canarsie Park. It's right outside of downtown Waterloo. And because, as he says in his appraisal, it's developable property, which will be developed within the next decade. So for the $15,000 an acre, 40-acre property, they do not expect that to be developed immediately. It can be developed any time within the next decade, according to the standards that their appraiser says. Isn't that speculative, though? No, it really isn't, because we're not asking it to be – we're not selling it as developed property. We're selling it as developable property. Nothing more has to be done for it to be developable property. If I said, we have to put an interchange into this – if we put an interchange here, then the property will be worth $30,000 an acre. The property that was in the subdivision is developed property. It's selling for – in the 1990s, it was selling for $30,000 an acre, way back in the early 90s. So if you said, I believe that it will be – this is what the price is because I believe it is going to be developed property, so therefore it's $30,000 an acre, that would be speculative. If you have to do something, you have to put another set of circumstances outside of your control in there, that would be speculative. But all property is – all property that's farmland or has another highest and best use is in, by very definition, if you're going to change the use, it's being sold as developable. So if you don't have to do anything to develop it – I'm sorry, I misspoke. If you don't have to do anything to make it developable property, then you're appraising it as property that can be developed. If you were trying to say it's developed property, then you would have had to – In other words, you're just saying it's platted, but there's no curbs, gutters, or roads. Exactly. That's about 50% of what you're – in a subdivision, about 50% of the cost. But in both of these – I believe that if you look at the record, the only thing that's been done to the 40, it's not zoned, it's only a preliminary plat. And when you spread the cost of a preliminary plat over 80 acres, that's not a big deal. But it's not zoned, there's no roads, there's not a shovel of dirt. Are we talking about the 40 or the 80? Either. Oh, okay. None of them. They're both the same, okay. Mr. Heck testified to that, that not a shovel of dirt has been turned on either one of these things. The only thing on the 40 is a preliminary plat. It is essentially the same property. So if you're saying – if Mr. Tate, their appraiser, is saying the 40 is worth $15,000 an acre, and he's basing that upon the fact that it's proximity to the subdivision, proximity to Waterloo, and the fact that it can be developed and will be developed within the next decade, which is what he says in his appraisal, then Mr. Voss, who agrees with this, says, look, the 80 acres, same contiguity – it's contiguous to the subdivision also. It is the same type of land, essentially. It's the same proximity to Waterloo, and I think that's going to be developed – can be developed within four to six years, which is well within the decade that Mr. Tate set out for the $15,000 an acre for the 40 acres. So really, when the judge from Monroe County, the sitting judge from Monroe County, who lives in Monroe County, Judge Doyle, looks at this and he compares what the testimony is of the two experts. He's looking and saying, well, wait a minute, which is more unreasonable, that this contiguous ground, this 80 acres of contiguous ground is worth $5,000 an acre, farm ground, even though we know it can be developed, or is it more unreasonable to say that it's totally unreasonable to say that this is $5,000 an acre farm ground when it's essentially the same ground as the 40 acres? Wasn't there a lot of testimony, though, also about nobody around there is selling any subdivision ground whatsoever? Well, but – There's a lot of – and there's a lot of subdivision ground available. Well, that's what – but that's what Mr. Voss testified to. He's the assessor for Randolph County, and he does 100 of these a year. He said, look, the real estate market in Randolph County is not depressed. It is flat. It takes a little bit longer to sell it, but it's sellable, and it's property that's going to be developed because of where it is. It doesn't mean that it has to be developed tomorrow. None of this property is bought with the idea that it's going to necessarily be developed tomorrow. It's a futuristic project when you do it. And when you've got 80 acres, you're much more likely to be able to get a big developer to come in because the cost per acre is going to be a lot cheaper because of your economies of scale. So, yeah, there's some little differences, but they're both basically contiguous to the subdivision, and both of the appraisers say that's what's important. So, I mean, it's like having a piece – there's a piece of ground right next to Bush Stadium, and it's got nothing on it but grass right now. You know, if you're planting corn on it, it's not agricultural just because you plant corn on it. Nobody's going to believe that that's an agricultural price because somebody is going to look at that and say that's a million dollars an acre right there in the middle of St. Louis. The same with this. It's the location. So if it was developed ground, you know, that's where they're going to make their money. They're going to pay the $15,000 an acre now so they can make $60,000 an acre when they develop this ground. And if you put that acreage up there at $5,000 an acre, I guarantee that acreage would go in a heartbeat because you'd make a whole lot more money on it at $5,000 an acre than you would at $15,000 an acre because there's no difference in this ground. And I think that you – that this court has to look at the fact that you have a developer – I mean an appraiser who has 30 years of experience, who's familiar with this area, who testified to this, and that it's not unreasonable for the judge to rely upon that. And with regard – I think they raised a second issue, and that was the division of 50-50 percent. Division of the marital assets was an abuse of discretion. We have a situation here where we have a 20-year marriage that the people didn't take a vacation for 20 years because even though this was – this was a property that had been – that he had prior to the marriage and had for a decade or so prior to the marriage, he gifted it to the wife right after the marriage. And two years later, they started working on this, and they worked on this for 20 years. And if you read all the things that she did with this property, and she did in the marriage, working 40 hours a week, taking care of his trucking business, going to all his own stuff over and over and over to the extent that this was their life 24-7, to say that that's an abuse of discretion by the trial court, that it's not reasonable for the trial court to say that this is a 50-50 split and a 20-year marriage would just be disingenuous. We simply ask that the trial court be affirmed. And unless you have any further questions. Thank you. Any rebuttal? First of all, can I ask you, did your client ask that the 80 acres be awarded to him? I believe so. Okay. And he never – after the judge valued it, didn't change his mind on that and asked that it be given to her? Correct. Just to kind of define what was zoned and what wasn't, in the expert depositions and testimony, the 40-acre tract was planted as a subdivision and was zoned as for single-family residences. The 80-acre tract was zoned agricultural. If you rely upon the expert's testimony, Boss and Tate, as Mr. Stubblefield stated, then the trial court should have found that the 80-acre tract was agricultural acreage, that that was valued at $6,500 and that it was unsaleable at $15,000 an acre. Based upon that testimony, to find that that property is worth $15,000 and can be sold at $15,000 as of the date of dissolution is unreasonable. It is speculative and therefore an inappropriate value as to the property of the date of dissolution. You cited Clayton. Isn't that what Clayton did with stock? Said in two years it's going to increase two times or three times? It did, but in Clayton, the stock was guaranteed that when he retires after two years, it would be $3,400 instead of $1,000. So that was a guarantee increase. This, you would have to determine, is the market going to increase that people would want to buy this property? Will the property be allowed to be rezoned and platted? Will there be development? Is there anyone out there that would purchase it for $15,000? These are all speculations that the court had to take into consideration, whereas in Clayton, that increase to $3,400 was a guarantee. Are there any further questions? No, ma'am. Thank you. Thank you, Your Honor. Thanks, both of you, for your arguments. We'll take the matter under advisory.